Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

Timothy M. Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, COUNCIL ON FISH & WILDLIFE, | CV-25-49-KLD |
| Plaintiffs, vs. | RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| DALE OLSON, Madison District Ranger, Beaverhead-Deerlodge National Forest;  LISA TIMCHAK, Supervisor, Beaverhead-Deerlodge National Forest; LEANNE MARTEN, Regional Forester, U.S. Forest Service Northern Region; U.S. FOREST SERVICE; U.S. FISH & WILDLIFE SERVICE. Defendants. | |

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Plaintiffs' NEPA challenge to the 2020 Remapping Decision is not
           moot because it has not been withdrawn and the 2020 map is still being
           used for a number of current projects.. . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Plaintiffs' challenge to the Project Biological Opinion is not moot
           because it has not been withdrawn, and the Biological Opinion still
           applies to mitigate effects from the hundreds of acres of burning and
           over 13 miles of road clearing and widening that have occurred . . . . . 8

      C.    Plaintiffs' challenge to the Greenhorn Project Decision Notice is not
           moot because effective relief is available; the Project has been partially
           implemented and therefore this Court may issue relief in the form of
           remediation pursuant to *Neighbors of Cuddy Mountain v.*
           *Alexander*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    In the alternative, Plaintiffs would stipulate to dismissal of their
           Complaint if Defendants (1) withdraw the Project Biological Opinion,
           (2) agree to prepare a Forest Plan Amendment with an EIS for the 2020
           Remapping Decision, and (3) agree not to implement the 2020
           Remapping Decision in site-specific projects until the Forest Plan
           Amendment is in place. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

CASES

*Citizens for Better Forestry v. USDA,* 341 F.3d 961 (9th Cir. 2003). . . . . . . . . . . . 7

*Clark v. City of Lakewood,* 259 F.3d 996 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . 5

*Cottonwood Environment L. Ctr. v. USFS,* 789 F.3d 1075 (9th Cir. 2015). . . . . . . 7

*Friends of the Earth v. Laidlaw Envtl.Servs. Inc.,* 528 U.S. 167 (2000) . . . . . . 6, 12

*Native Ecosystems Council v. Mehlhoff,*

  2022 WL 1159415 (D. Mont. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Neighbors of Cuddy Mountain v. Alexander,* 303 F.3d 1059 (9th Cir. 2002) . . . . 12

*Northwestern Environmental Defense Ctr. v. Gordon,*

  849 F.2d 1241 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . 7

*Strotek Corporation v. Air Transportation Ass'n. of American,*

  300 F.3d 1129 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Yellowstone to Uintas Connection v. Marten,*

  2024 WL 3400524 (D. Mont. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

STATUTES

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

INDEX OF EXHIBITS

Exhibit A    Greenhorn Project Decision Notice Withdrawal Letter

Exhibit B    Greenhorn Project Biological Opinion

## I.  INTRODUCTION

In this case, Plaintiffs challenge "the U.S. Forest Service's and U.S. Fish & Wildlife Service's authorizations of the Greenhorn Project (Project) and the elimination of 1.1 million acres of mapped lynx habitat on the Beaverhead-Deerlodge National Forest (Forest)."  Doc. 1, Complaint ¶ 1.  Further, "Plaintiffs attest that the decisions approving the Project and reducing mapped lynx habitat by 1.1 million acres are arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law."  Doc. 1, Complaint ¶ 2.

Thus, there are three decision documents challenged in this case: (1) the Project Decision Notice; (2) the Project Biological Opinion; and (3) the Forest-wide remapping decision that eliminated 1.1 million acres of lynx habitat on the Forest (2020 Remapping Decision).  In response to this lawsuit, the Forest Service stopped implementing the Project and withdrew the first challenged decision document – the Project Decision Notice.  *See* Exhibit A – Project Decision Notice Withdrawal Letter; *see also* Doc. 9-6 (listing Project activities that have already been completed).

However, the U.S. Fish & Wildlife Service has not withdrawn the second challenged decision document – the Project Biological Opinion.  Additionally, the Forest Service has not withdrawn the third challenged decision document – the 2020

Remapping Decision.  To the contrary, the Forest Service is still continuing to implement the 2020 Remapping Decision in nine site-specific projects[1]:

(1) Basin Creek-Butte Watershed EA (July 2023);

(2) Badger Creek Habitat CE (September 2023);

(3) Gold Coin Wildlife Enhancement and Fuels Reduction CE (May 2023);

(4) Pintler Face EA (September 2021);

(5) Rancho Deluxe Vegetation Project CE (May 2021);

(6) Selway-Saginaw EA (May 2024);

(7) Trail Creek Fire Salvage CE (June 2022);

(8) Upper Willow Creek CE (September 2021); and

(9) Spaeth's Corner CE (March 2023).

Plaintiffs and Defendants reached a settlement regarding (4) Pintler Face, but they have not reached an agreement regarding any other of the above-listed projects. *See* CV-24-25-M-DLC,  Doc. 53-1, Settlement Agreement (March 24, 2025).

For the reasons set forth below, this case is not moot.  However, this case could be easily resolved if Defendants would (1) withdraw the Project Biological Opinion, (2) agree to prepare a Forest Plan Amendment with an EIS for the 2020

---

[1]Defendants do not disclose these ongoing projects in their brief, but agency counsel provided this information to Plaintiffs' counsel via email.  Declaration of Rebecca K. Smith ¶4 (July 21, 2025).

2

Remapping Decision, and (3) agree not to implement the 2020 Remapping Decision

in site-specific projects until the Forest Plan Amendment is in place.  If Defendants

would agree to these three terms, Plaintiffs would stipulate to dismissal.

## II.  BACKGROUND

The history of the 2020 Forest-wide lynx habitat remapping decision is set

forth in this Court's preliminary injunction order in the Pintler Face case:

> In 2001, the Forest Service developed a lynx habitat map for the
> BDNF. [].  The map designated 2,711,422 acres as mapped lynx
> habitat and designated 509 LAUs. []. . . . In 2020, the Forest Service
> remapped lynx habitat and LAUS within the BDNF. []  The remapping
> effort resulted in a 60% decrease in lynx habitat—from 2,711,422
> acres in 2001 to 1,625,806 acres in 2020. [] Additionally, the Forest
> Service reduced the LAUs within the forest from 509 LAUs to 78
> LAUs. [] The Forest Service did not prepare a NEPA analysis for the
> elimination of LAUs or the elimination of approximately 1.1 million
> acres of lynx habitat.

*Yellowstone to Uintas Connection v. Marten*, No. CV 24-25-M-DLC, 2024 WL

3400524, at *2–3 (D. Mont. 2024).

This Court ultimately found that Plaintiffs raised serious questions on the

merits regarding their NEPA challenge to the 2020 Remapping Decision:

> In *Greater Red Lodge II*, this Court found that the Forest Service
> violated NEPA by failing to take a hard look at the environmental
> effects of its revisions to the Custer Gallatin National Forest lynx
> habitat map . . . . []. There, the Forest Service remapping decision
> resulted in the removal of 19,000 acres of lynx habitat. []. However,
> notably, no LAUS were removed. Nonetheless, the Court held that the

3

Forest Service could not rely on a new lynx habitat map that removed areas within the project boundary from NRLMD's protections without reviewing the new map under NEPA. []. Here, in comparison, the 2020 Remapping Decision resulted in the removal of more than 1,000,000 acres of lynx habitat and 431 LAUs. Based on this Court's own precedent, Plaintiffs have raised serious questions going to the merits as it relates to their claims that the Forest Service violated NEPA by (1) failing to prepare a NEPA analysis for the 2020 Remapping Decision and (2) unlawfully tiering the Project EA and DN/FONSI to the new map.

Other courts have likewise held that the remapping of lynx habitat requires a NEPA analysis. For example, in *Native Ecosystems Council v. United States Forest Service*, the District of Idaho found that the Forest Service was required to conduct a NEPA review of a map that removed eight LAUs and 400,000 acres of lynx habitat before using the map as a basis for approving a project. []. The Court explained that "the adoption of the 2005 map falls nicely within" the definition of a major Federal action and "with the adoption of the 2005 map, the 390,900 acres of previously restricted land was opened for uses that were not available without the adoption of the map." [].

Similarly, in *Oregon Natural Resources Council Fund v. Forsgren*, the District of Oregon found that because a new mapping direction "significantly changed the nature and extent of lynx habitat, and the consequences to the lynx may be far-reaching," the mapping direction constituted a major federal action. []. Accordingly, the government was "required under NEPA to prepare an Environmental Assessment with public involvement to determine whether the new mapping direction might significantly affect the lynx in the Forest and whether Defendants should prepare an EIS." [].

*Yellowstone to Uintas Connection*, 2024 WL 3400524, at *5 (internal citations omitted).

4

In the Pintler Face case, this Court issued a partial preliminary injunction. *Id.* Thereafter, rather than litigating the case to a final decision, the Parties opted to enter into a settlement agreement to remove approximately 2,186 acres from the Project because those acres would have been protected as lynx habitat under either the 2001 map or the 2020 map. CV-24-25-DLC, Doc. 53-1 ¶1.

In this case, Plaintiffs raise the same NEPA challenge to the 2020 Remapping Decision in Claim One in their Complaint. Doc. 1, Complaint ¶¶ 103-112. Therefore, if this NEPA claim is ultimately litigated in this case, Plaintiffs are likely to prevail on this claim. *See Yellowstone to Uintas Connection*, 2024 WL 3400524, at *5.

## III. STANDARD OF REVIEW

The burden is on the Forest Service to establish that this case is moot. Plaintiffs bear the burden of establishing jurisdiction at the time the complaint is filed; in this case, at the time the complaint was filed, this Court had federal question jurisdiction. 28 U.S.C. §1331; *see Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002)(federal question jurisdiction "is determined . . . as of the time the complaint is filed . . . .").

In contrast, "changing circumstances that arise after the complaint is filed" require an analysis of mootness. *Clark v. City of Lakewood*, 259 F.3d 996, 1006

(9th Cir. 2001). In the mootness inquiry, the burden shifts to the defendants: "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl.Servs. Inc.*, 528 U.S. 167, 190 (2000).

Furthermore, "in deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)(emphasis in original, internal quotation marks and citation omitted). Accordingly, Defendants' "burden of demonstrating mootness is a heavy one." *Id.*

## IV.  ARGUMENT

**A.    Plaintiffs' NEPA challenge to the 2020 Remapping Decision is not moot because it has not been withdrawn and the 2020 map is still being used for a number of current projects.**

As noted above, although the site-specific Greenhorn Project decision has been withdrawn, Exhibit A, the 2020 Remapping Decision has not been withdrawn. Moreover, the Forest Service is still actively using the new 2020 map in a number of current projects, which are listed above. Thus, Plaintiffs' Claim One NEPA challenge to the 2020 Remapping Decision is still a live controversy.  A finding that

6

Claim One is moot would be clearly erroneous.

In its brief, the Forest Service argues: "*even if Plaintiffs could bring a facial challenge to the lynx remapping under NEPA without challenging a concrete application of that remapping*, any such challenge under NFMA is clearly nonjusticiable."  Doc. 9 at 15 n.3 (*citing Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-37 (1998))(emphasis added).

To clarify – Plaintiffs' Claim One NEPA challenge to the 2020 Remapping Decision is most certainly justiciable without a site-specific project. In *Ohio Forestry*, the Supreme Court clarified: "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." 523 U.S. at 737.

Furthermore, the Ninth Circuit is unequivocal that there is no legal obligation to challenge a site-specific project when bringing a NEPA challenge to a programmatic agency decision: "the imminence or lack thereof of site-specific action is simply a factual coincidence, rather than a basis for legal distinction. . . . we reiterate that the planning of site-specific action *vel non* is irrelevant to the ripeness of an action raising a procedural injury."  *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 977 (9th Cir. 2003); *see also Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1084 (9th Cir. 2015)("The imminence

7

of project-specific implementation 'is irrelevant to the ripeness of an action raising a procedural injury.'")

Accordingly, the NEPA challenge in Claim One of Plaintiffs' Complaint is ripe and justiciable. There is no legal basis to dismiss this claim.

**B.      Plaintiffs' challenge to the Project Biological Opinion is not moot because it has not been withdrawn, and the Biological Opinion still applies to mitigate effects from the hundreds of acres of burning and over 13 miles of road clearing and widening that have occurred.**

Next, Plaintiffs' challenge to the Project Biological Opinion in Claim Four is not moot because Defendants have not withdrawn the Biological Opinion. *See* Doc. 1, Complaint ¶¶ 135 – 141. Moreover, for this Project, hundreds of acres of prescribed burning has occurred. Doc. 9-6 ¶¶ 3, 5. Additionally, over 13 miles of road work has occurred, including clearing and widening of roads. Doc. 9-6 ¶9. So long as the Biological Opinion is in place, the agencies must comply with its reasonable and prudent measures, terms and conditions, reporting requirements, conservation recommendations, and reinitiation requirements, which were all designed to monitor and mitigate impacts on grizzly bears from activities like burning and road work. *See* Exhibit B, Project Biological Opinion at 38-40. None of the cases cited by Defendants address a challenge to a Biological Opinion that remains in place and still governs Project activities that have already been

8

implemented.

The Ninth Circuit holds that "courts of equity have broad discretion in shaping remedies." *Nw. Envtl. Def. Ctr.*, 849 F.2d at 1244–45. Significantly, "[t]he plaintiffs are not required . . . to have asked for the precise form of relief that the district court may ultimately grant." *Id.* Instead, the applicable test here is whether the Court could grant "any" effective relief in this case. *Id.*

This Court addressed a similar situation in the Iron Mask case. *Native Ecosystems Council v. Mehlhoff*, No. CV-20-186-BLG-SPW-TJC, 2022 WL 1159415 (D. Mont. Feb. 7, 2022), *report and recommendation adopted in relevant part* by 2022 WL 766392 (D. Mont. Mar. 14, 2022). In the Iron Mask case, "the BLM voluntarily withdrew the 'unimplemented portions' of [a] 2020 Grazing Decision. In withdrawing the decision, the BLM stated, 'upon completing rangeland health assessments, the BLM will complete a new NEPA analysis for this area.'" 2022 WL 1159415, at *2.

This Court was thus presented with the question of whether the plaintiffs' challenge to the 2020 Grazing Decision was moot, and this Court ultimately found that the challenge was not moot:

> The Court finds that although the 2020 Grazing Decision was withdrawn, there nevertheless remains a possibility for effective relief because impacts from implemented portions of the Decision could

9

ultimately be mitigated by removal or modification of the grazing developments. The Ninth Circuit has found live controversies in environmental cases, even where the contested government action has been completed.

. . .

Thus, the fact that the BLM has voluntarily withdrawn the unimplemented portion of the 2020 Grazing Decision does not moot Plaintiffs' claims with respect to the implemented portions of the Decision. Otherwise, the BLM "could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine." []. As the Ninth Circuit observed, "[s]uch a result is not acceptable." [] Because relief remains available to Plaintiffs notwithstanding the BLM's voluntary withdrawal of the unimplemented portions of the 2020 Grazing Decision, Plaintiffs' second claim is not moot.

*Mehlhoff*, 2022 WL 1159415, at *6–7.

The same rationale applies here.  The challenge to the Biological Opinion here is not moot because there is available relief.  *See Nw. Envtl. Def. Ctr.*, 849 F.2d at 1244–45.  For example, the Court could grant relief in the form of a remand to establish new or different reasonable and prudent measures, terms and conditions, reporting requirements, conservation recommendations, or reinitiation requirements to better mitigate impacts to grizzly bears from the activities that have already been implemented  – which includes hundreds of acres of burning and miles of road clearing and widening in occupied grizzly bear habitat.   These possible forms of relief are just some examples of what is possible – and they require a finding that the challenge to the Biological Opinion is not moot.  *See e.g., Mehlhoff*, 2022 WL

10

1159415, at *6-7.

**C.** **Plaintiffs' challenge to the Greenhorn Project Decision Notice is not moot because effective relief is available; the Project has been partially implemented and therefore this Court may issue relief in the form of remediation pursuant to *Neighbors of Cuddy Mountain v. Alexander*.**

As noted above, although the Project decision was withdrawn, the Forest Service did implement a portion of the Project before withdrawing the decision: hundreds of acres of prescribed burning were implemented.  Doc. 9-6 ¶¶ 3, 5. Additionally, over 13 miles of road work were implemented, including clearing and widening of roads.  Doc. 9-6 ¶9.

As also discussed above, in Section (B), this Court found that a challenge to a partially-implemented and partially-withdrawn project was not moot in the Iron Mask litigation. *Mehlhoff*, 2022 WL 1159415, at *6-7.  The Ninth Circuit also reached a similar finding regarding a completed project in a National Forest logging case in *Neighbors of Cuddy Mountain v. Alexander*:

> Although of course the logged trees cannot be brought back, the court below might order other measures to help mitigate the damage caused by the sale. For instance, it could order the Forest Service to study the sale's impacts on species viability, and, if necessary, to mitigate those impacts in both the area of the sale and elsewhere in the forest. If warranted, it might order the Forest Service to adjust future timber plans to compensate for this allegedly unlawful one. []Or, the remedy could take the form of a more direct species population intervention, such as monitoring the birds' population trends and developing, if necessary, artificial habitats for their recovery.[] Because "effective

11

> relief may still be available to counteract the effects of the violation, the controversy remains live and present." []

303 F.3d 1059, 1066 (9th Cir. 2002) (citations omitted). The same considerations apply here – this Court could order further study, mitigation, adjustment of future projects, or other similar types of relief. *See id.* Thus, this case is not moot. *Id.*

> Furthermore, the Ninth Circuit has

> specifically distinguished . . . cases in which a plaintiff had made a broad request for such other relief as the court deemed appropriate, noting that this circuit may construe such requests for relief broadly to avoid mootness. . . . In addition to an injunction, Neighbors' complaint requests "such further relief as may be necessary and appropriate to avoid further irreparable harm." Because harm to old growth species may yet be remedied by any number of mitigation strategies, as discussed above, the case is live.

*Neighbors of Cuddy Mountain*, 303 F.3d at 1066. Here too, Plaintiffs' Complaint broadly requests "any such further relief as may be just, proper, and equitable." Doc. 1, Complaint at 34. This "broad request for such other relief as the court deemed appropriate" may be construed "to avoid mootness." *Neighbors of Cuddy Mountain*, 303 F.3d at 1066.

For all of these reasons, Plaintiffs' challenge to the Project Decision Notice is not moot.

//

12

**D.** **In the alternative, Plaintiffs would stipulate to dismissal of their Complaint if Defendants (1) withdraw the Project Biological Opinion, (2) agree to prepare a Forest Plan Amendment with an EIS for the 2020 Remapping Decision, and (3) agree not to implement the 2020 Remapping Decision in site-specific projects until the Forest Plan Amendment is in place.**

Finally, Plaintiffs note for the record that they are open to negotiating a settlement with Defendants in this case. Rather than moving forward to litigate cross-motions for summary judgment on claims where Plaintiffs will likely prevail based on prior cases from this Court, i.e. Pintler Face and Greater Red Lodge II, Plaintiffs would stipulate to dismissal of their Complaint if Defendants (1) withdraw the Project Biological Opinion, (2) agree to prepare a Forest Plan Amendment with an EIS for the 2020 Remapping Decision, and (3) agree not to implement the 2020 Remapping Decision in site-specific projects until the Forest Plan Amendment is in place.

## V.  CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss because this case is not moot:  Two of the challenged decisions have not been withdrawn and are still being implemented; and the third challenged decision was partially implemented before it was withdrawn and therefore relief is available.

Respectfully submitted this 21st Day of July, 2025.

/s/ Rebecca K. Smith
Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorneys for Plaintiffs


CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is 3,061 words, excluding the caption, tables, signature blocks, and certificate of compliance.

/s/ Rebecca K. Smith
Rebecca K. Smith
PUBLIC INTEREST DEFENSE CENTER, PC

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorneys for Plaintiffs