IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER CARLTON, Acting Deputy Regional Forester, U.S. Forest Service Northern Region, et al.,<br><br>Defendants. | CV 25–49–M–KLD<br><br><br>ORDER |

Plaintiffs Alliance for the Wild Rockies, Native Ecosystems Council, Council on Fish and Wildlife, and Gallatin Wildlife Association move for a preliminary injunction to enjoin activities authorized by the Greenhorn Vegetation Project ("Project") on the Beaverhead-Deerlodge National Forest. For the reasons set forth below, the motion is granted.

## I.      Background

Plaintiffs initially filed this lawsuit against Defendants[1] Christopher Carlton, Josh Connors, Corey Lewellen, the United States Forest Service ("USFS"), and the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current public officers are substituted for their predecessors as named Defendants.

United States Fish and Wildlife Service ("FWS") on April 3, 2025. (Doc. 1). The Project was withdrawn on May 20, 2025. (Doc. 9 at 10; FS009472).[2] On February 9, 2026, USFS issued a supplemental environmental assessment and finding of no significant impact, authorizing a modified Project. (FS009527). Pursuant to the Court's January 5, 2026 order (Doc. 20), Plaintiffs filed an amended complaint on February 24, 2026. (Doc. 22).

Plaintiffs' amended complaint alleges violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4331 et seq.; the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq.; the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq.; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. (Doc. 22 at 2 ¶ 3). Plaintiffs' claims are brought under the APA. (Doc. 22 at 2 ¶4).

The Project in its current form was authorized by Defendant Josh Connors, the USFS Madison District Ranger. (FS009466). The Project area consists of 41,900 acres in Madison County, Montana and is located approximately 10 miles south of Virginia City. (FS009474; FS009469). The National Forest lands in the Project area fall within the Madison Ranger District of the Beaverhead-Deerlodge National Forest. (FS009469). The Beaverhead-Deerlodge National Forest operates

---

[2] Citations to the administrative record will consist of (1) an "FS" prefix for the USFS portion of the record or an "FWS" prefix for the FWS portion and (2) the bates page number.

under the 2009 Beaverhead-Deerlodge National Forest Land and Resource Management Plan ("Forest Plan"). (FS000008-09).

The Project involves a range of vegetation treatments across 15,285 acres of National Forest in the Project area, including commercial and noncommercial treatments. (FS009473-74). Authorized treatments include 1,048 acres of "Commercial Thin and Prescribed Fire," 475 acres of "Conifer Removal," 3,918 acres of "Conifer Removal and Prescribed Fire," 22 acres of "Regeneration Harvest," and 9,822 acres of "Prescribed Fire." (FS009473-74). The Project also authorizes the maintenance or reconstruction of up to 24 miles of existing roads, and the construction of 4.7 miles of temporary roads. (FS009474).

Plaintiffs' arguments going to the merits at this stage concern two species listed as threatened under the ESA—grizzly bear and Canada lynx. (Doc. 30 at 14, 18). The Project area is located "in an area where grizzly bears may be present," but outside of a demarcated grizzly bear recovery zone. (FWS000011). The Project area contains habitat for Canada lynx. (FWS000001-02).

Pursuant to Section 7 of the ESA, USFS engaged in consultation with FWS regarding the effects of the Project on threatened and endangered species. After the Project was modified and reinitiated, USFS prepared an addendum to the original biological assessment "to provide supplemental information for the threatened grizzly bears (*Ursus arctos horribilis*) and Canada lynx (*Lynx canadensis*)."

3

(FWS000001). USFS determined that the Project was "likely to adversely affect" grizzly bears and "not likely to adversely affect" lynx. (FWS000001). FWS concurred with USFS' determination regarding lynx, and prepared a biological opinion regarding grizzly bear. (FWS000003-04).

Plaintiffs' substantive claims in part address USFS' decision to authorize an amendment to the Forest Plan. (Doc. 22 at 36). The amendment formalized the use of an updated lynx habitat map delineating lynx analysis units. USFS engaged in consultation regarding the amendment. (FWS000620).

On June 9, 2026, Plaintiffs filed the instant motion for preliminary injunction. (Doc. 29). Oral argument was held on July 14, 2025, in Missoula, Montana. The motion is fully briefed and ripe for ruling.

## II.    Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) that the balance of equities tips in the plaintiff's favor, and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20. While the likelihood of success on the merits is the most important factor, *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017), a plaintiff "must satisfy all four

*Winter* prongs in order to secure an injunction." *Cottonwood Envtl. L. Ctr. v. U.S. Sheep Experiment Station*, No. CV 17-155-M-DLC, 2019 WL 3290994 at *1 (D. Mont. July 22, 2019) (citing *Alliance of the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

The Ninth Circuit has adopted a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Cottrell*, 632 F.3d at 1131. The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Cottrell*, 632 F.3d at 1131 (citations and internal quotation marks omitted). As to the first *Winter* factor, "the serious questions standard is 'a lesser showing than likelihood of success on the merits.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017)).

The test for a preliminary injunction is modified in cases where claims are brought pursuant to the ESA. "[W]hen applying the 'serious questions' test to ESA

claims, the last two factors—balance of hardships and the public interest—always '[tip] heavily in favor of protected species'" *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1190 (quoting *Natl. Wildlife Fedn. v. Burlington N. R.R., Inc.,* 23 F.3d 1508, 1511 (9th Cir. 1994)). Accordingly, a court considering ESA claims on a motion for preliminary injunction need only consider (1) the likelihood of success on the merits or whether the plaintiff has raised serious questions, and (2) the likelihood of irreparable harm in the absence of an injunction. *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1190. If a plaintiff fails to establish a likelihood of success on the merits or a serious question, the court "need not examine the three remaining *Winter* factors." *Doe v. Reed*, 586 F.3d 671, 681 n.14 (9th Cir. 2009).

A court's review of a federal agency's biological opinion is governed by the APA. *Natl. Wildlife Fedn. v. Natl. Marine Fisheries Serv.*, 839 F. Supp. 2d 1117, 1124–25 (D. Or. 2011) (citing *Bennett v. Spear,* 520 U.S. 154, 174–77, (1997)). Pursuant to the APA, courts are required to uphold agency actions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" or "without observance of procedure required by law." *Ctr. for Biological Diversity v. Zinke*, 868 F.3d 1054, 1057 (9th Cir. 2017); 5 U.S.C. § 706(2)(A), (D).

The APA standard of review is deferential. A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it

to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

An agency action likewise is arbitrary and capricious if the agency fails to articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs.*, 463 U.S. at 43. A court may not accept an agency's post hoc rationalizations for its action. *Motor Vehicle Mfrs.*, 463 U.S. at 50. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs.*, 463 U.S. at 50.

## III.   Discussion

### A.   Success on the Merits

Plaintiffs make two primary arguments regarding the merits of this case, both involving alleged violations of the ESA. Plaintiffs' first merit argument concerns grizzly bears. Plaintiffs argue that FWS failed to use the best available science regarding grizzly bear secure habitat in the biological opinions for the Project and Forest Plan. Plaintiffs' second argument concerns lynx. Plaintiffs argue that the Forest Plan amendment and its biological opinion do not use the best

available science and are arbitrary and capricious for failing to address issues of reduced connectivity and recovery needs for lynx.

For the reasons set forth below, the Court finds that Plaintiffs have demonstrated a likelihood of success on their grizzly bear claim.[3] Because Plaintiffs have established that they are likely to succeed on their grizzly bear secure habitat claim, the Court does not need to address the remaining arguments going to the merits. *See Cottrell,* 632 F.3d at 1139. Accordingly, the Court does not reach a conclusion regarding the merits of Plaintiffs' lynx claims.

In the biological opinions for the both the Project and Forest Plan, FWS relies on secure habitat as a means to assess the effects of roads on grizzly bears. (FWS000013; FWS000230-33). Both biological opinions determine the overall quantity of secure habitat using a 10-acre "patch size." (FWS000013; FWS000230-33; FS005625). This means that, for the purposes of FWS' analysis, secure habitat exists only where a 10-acre parcel meets all the other requirements for secure habitat.

---

[3] Defendants argue that the "serious questions" standard was rendered invalid by either the Infrastructure Investment and Jobs Act ("IIJA"), 16 U.S.C. § 6592c(e), or the Supreme Court's decision in *Starbucks Corp. v. MckKinney*, 602 U.S. 346 (2024). (*See* Doc. 34 at 14-15). Although the IIJA was enacted in 2021 and *Starbucks* decided in 2024, Defendants cite no subsequent decisions to support the proposition that the regularly invoked serious questions standard no longer applies. In any event, the Court finds that Plaintiffs have met the higher "likelihood of success" standard. Accordingly, Plaintiffs succeed on this issue whether or not the Court applies the serious questions standard.

Plaintiffs challenge the use of the 10-acre patch size, stating that there is "no scientific basis" for the 10-acre calculation. (Doc. 30 at 17). Plaintiffs therefore conclude that both biological opinions fail to use the best available science, in violation of the ESA.

Under the ESA, consulting agencies must use "the best scientific and commercial data available." 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(g). A failure to do so is arbitrary and capricious, and a violation of the APA. *San Luis & Delta–Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014). In determining what constitutes the best available science, agencies are entitled to significant deference. "The determination of what constitutes the '*best* scientific data available' belongs to the agency's 'special expertise.... When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential.'" *San Luis & Delta–Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014) (quoting *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 103, (1983)).

The scope of the ESA's best available science requirement is limited and "merely prohibits [an agency] from disregarding available scientific evidence that is in some way better than the evidence [it] relies on." *Kern Cnty. Farm Bureau*, 450 F.3d 1072, 1080 (9th Cir. 2006) (quoting *Sw. Ctr. for Biological Diversity v. Babbitt,* 215 F.3d 58, 60 (D.C. Cir.2000)). "Mere disagreement" with the

conclusions reached by an agency in preparing a biological opinion does not substantiate a violation of the requirement. *Cascadia Wildlands v. Thrailkill*, 806 F.3d 1234, 1241 (9th Cir. 2015) (citing *United States v. Lewis,* 611 F.3d 1172, 1180 (9th Cir.2010)). "This standard does not require the agency to 'conduct new tests or make decisions on data that does not yet exist.'" *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1047 (9th Cir. 2015) (quoting *San Luis & Delta–Mendota Water Authority v. Locke,* 776 F.3d at 996).

In support of their best available science argument, Plaintiffs reference a recent decision from this District, *Center for Biological Diversity v. U.S. Forest Service,* 811 F. Supp. 3d 1206 (D. Mont. 2025) ("*South Plateau*"). Considering markedly similar circumstances, the court found that "[i]n relying on a 10-acre patch size to define grizzly bear secure habitat in the absence of any scientific evidence showing that such acreage provides adequate habitat, [FWS] failed to use the 'best available science' in violation of the ESA." *South Plateau*, 811 F. Supp. 3d at 1227-28.

On the same day that Plaintiffs filed the instant motion, another court in this District issued a decision in *Friends of the Bitterroot v. Borgum*, No. CV 24-169-M-DLC, 2026 WL 1660439 (D. Mont. June 9, 2026). That decision also addresses grizzly bear secure habitat. Citing to the *South Plateau* decision, the court held that "FWS violated the ESA by using a one-acre patch size in its Revised [Biological

Opinion] in the absence of scientific support for that decision." *Friends of the Bitterroot v. Borgum*, 2026 WL 1660439, at *8. Given the significance of the ESA's best available science requirement and grizzly bear secure habitat patch size to this matter, Plaintiffs filed a notice of supplemental authority in this case regarding the *Friends of the Bitterroot v. Borgum* decision. (Doc. 33). Plaintiffs have now highlighted two recent decisions from this District and Division that decided closely analogous issues against the government. Of the two decisions, the facts of *South Plateau* more closely mirror the Project.

Defendants offer two arguments in an attempt to distinguish *South Plateau*. First, Defendants argue that, unlike in *South Plateau*, the record in this matter provides ample support for FWS' decision to apply a 10-acre patch size. In *South Plateau*, the court identified a dispositive "analytical gap." Namely, the court questioned "how or why does a 10-acre area represent the minimum area needed for grizzly bear habitat?" *South Plateau*, 811 F. Supp. 3d at 1227. In other words, the *South Plateau* defendants failed to demonstrate how the best available science supports the 10-acre calculation. The record cites that defendants provided in *South Plateau* did not explain "why 10 acres, as opposed to 1 acre, 5 acres, or 50 acres, is an appropriate metric." *South Plateau*, 811 F. Supp. 3d at 1226.

The same analytical gap appears in this matter. While Defendants have provided citations to explain that the 10-acre standard was derived from the 2024

11

Conservation Strategy for the Grizzly Bear in the Greater Yellowstone Ecosystem, those references do not explain why 10-acres is the appropriate metric. (*See* Doc. 34 at 18-19; FWS000044; FWS001381-82; FWS001423-27; FWS001690; FWS004552; FS005625). As in *South Plateau*, Defendants are apparently unable to provide a reference that details the science underpinning the 10-acre patch size.

In addition, Defendants state that "all secure habitat patches, regardless of size, are important for grizzly bears in the [Greater Yellowstone Ecosystem] . . . and a minimum 10-acre patch size been used as the scientific standard to measure grizzly bear secure habitat there since 2003." (Doc. 34 at 18-9). However, the same arguments were advanced and rejected in *South Plateau*. *See South Plateau,* 811 F. Supp. 3d at 1225 ("Defendants argue that: (1) this has been the patch size used in the Greater Yellowstone Ecosystem since 2003; (2) the science supports any patch size, however small . . . ."). In general, the portions of the record cited by Defendants to explain the origins of the 10-acre patch size in this matter fail to distinguish *South Plateau*.

Second, Defendants argue that the "definition of secure habitat" was applied differently in *South Plateau* than it was in this matter. Specifically, Defendants argue that, in *South Plateau*, the court's holding "also concerned the agency's characterization of 'adequate habitat' . . . whereas [here] FWS used the definition of secure habitat patch as a density metric designed specifically to measure effects

12

to grizzly bears from motorized access." (Doc. 34 at 20). However, the *South Plateau* decision makes clear that, in that case, FWS "relied on metrics associated with grizzly bear secure habitat to assess the effects of roads on grizzly bears." *South Plateau*, 811 F. Supp. 3d at 1225. While the adequacy of the patch size is an inherent part of this issue, it appears that the 10-acre patch was used for the same analytical purposes in both instances.

Defendants also argue that, beyond *South Plateau,* there are reasons to find that Plaintiffs are not likely to succeed on the merits. Specifically, Defendants argue that Plaintiffs have misstated the relevant standard regarding the best available science, and that FWS is due substantial deference in selecting a scientific methodology for determining jeopardy. Ultimately, however, neither argument is sufficient to overcome the overwhelming similarities between this case and the decisions in *South Plateau* and—to a lesser degree—*Friends of the Bitterroot v. Borgum.*

In sum, this case presents facts that closely mirror a decision—*South Plateau*—where plaintiffs succeeded on virtually the same issue. And while the facts in *Friends of the Bitterroot v. Borgum* may be slightly less closely aligned, that decision nevertheless underscores Plaintiffs' likelihood of success in this matter. Accordingly, the Court finds that, for the purposes of a motion for a preliminary injunction, Plaintiffs have demonstrated that they are likely to succeed

on the merits. This *Winter* factor is therefore satisfied.

### B.      Irreparable Harm

To obtain a preliminary injunction "plaintiffs must establish that irreparable harm is *likely*, not just possible . . . ." *Cottrell,* 632 F.3d at 1128 (citing *Winter*, 555 U.S. at 22 (2008)). However, "establishing irreparable injury should not be an onerous task for plaintiffs" *Cottonwood Envtl. L. Ctr. v. U.S. Forest Service,* 789 F.3d 1075, 1091 (9th Cir. 2015). In some cases, "Plaintiffs' expressed desire to visit the area in an undisturbed state is all that is required to sufficiently allege harm under the ESA." *Alliance for Wild Rockies v. Marten*, 253 F. Supp. 3d 1108, 1111 (citing *Cottrell*, 632 F.3d at 1135).

Here, Plaintiffs argue that they will be irreparably harmed "in the absence of preliminary relief because once the logging occurs, it cannot be undone." (Doc. 30 at 28). In a declaration accompanying Plaintiffs' motion for a preliminary injunction, Michael Garrity, Executive Director of Plaintiff Alliance for the Wild Rockies, states:

> The Project threatens myself and the Alliance, and its members with concrete and particularized injury to our esthetic, recreational, scientific, spiritual, vocational, and educational interests in the area and the wildlife in that area, including grizzly bears, lynx, mature forests and other wildlife species. Logging, burning, road-building, road use, and road reconstruction harm these interests. These types of ecological and esthetic degradations will render the area unsuitable for our own esthetic, recreational, scientific, spiritual, vocational, and educational activities, which include wildlife observation and study, hiking, camping, and quiet contemplation in nature.

14

(Doc. 31 at 4 ¶ 7).

Defendants argue that Plaintiffs have failed to establish that irreparable harm is likely. Defendants first argue that Plaintiffs delayed filing this lawsuit, to the detriment of their claim of irreparable harm. Defendants state "Plaintiffs have known since March 18 that commercial timber harvest could begin as early as July 1, yet they waited nearly three months to move for a preliminary injunction." (Doc. 34 at 30). On reply, Plaintiffs offer a different timeline regarding the instant motion. According to Plaintiffs, they were informed only on April 23, 2026 that a timber sale had been awarded, and were given "actual notice" on May 18, 2026 that operations would begin on July 2, 2026. (Doc. 36 at 17).

Delay in seeking a preliminary injunction can weigh against a finding of irreparable harm. "As this Court has repeatedly and consistently explained, a delay of even a few months is a significant delay in the life of a timber sale operation." *Native Ecosystems Council v. Webber*, No. CV 25-25-M-DLC, 2025 WL 1643100, at *7 (D. Mont. June 10, 2025) (citing *Yellowstone to Uintas Connection v. Marten,* No. CV 24-25-M-DLC, 2024 WL 3400524 at *6 (D. Mont. July 12, 2024)); *Helena Hunters and Anglers Ass'n v. Marten*, No. CV 19-106-M-DLC, 2019 WL 5069002, at *2 (D. Mont. Oct. 9, 2019). However, under either party's timeline, Plaintiffs' delay in bringing the instant motion was not so great as to meaningfully affect the determination of irreparable harm in this matter.

Defendants next argue that Plaintiffs' allegations of irreparable harm are too generic to satisfy this prong of the *Winter* test. In support, Defendants reference *Friends of the Bitterroot v. Marten*, where a court in this District found that the plaintiffs had not demonstrate a likelihood of irreparable harm because the allegation of harm failed "to address the particular circumstances of the Project." *Friends of the Bitterroot v. Marten*, CV 20-19-M-DLC, 2020 WL 2062139, at \*2 (\*D. Mont. Apr. 29, 2020). However, that case is distinguishable.

In *Friends of the Bitterroot v. Marten*, the court set out several reasons why plaintiffs failed to demonstrate irreparable harm. First, the court found that the dispute could be resolved on the merits before the commencement of the activities that plaintiffs sought to enjoin. *Friends of the Bitterroot v. Marten*, 2020 WL 2062139, at \*2. This is not the case here. Second, the court found that the road work that plaintiffs sought to enjoin would primarily take place in already disturbed landscapes and would, in many cases, benefit the plaintiffs' interests. *Friends of the Bitterroot v. Marten* , 2020 WL 2062139, at \*2. Here, the Defendants have failed to support such a conclusion.[4] The analogy to *Friends of the Bitterroot v. Marten* therefore fails.

---

[4] At oral argument, Defendants explained that the temporary roads that will be constructed this year will be in an area where other roads already exist. While this fact might otherwise support an analogy to *Friends of the Bitterroot v. Marten*, it is not sufficient to overcome the other, significant differences between that decision and the facts at hand.

Defendants next argue that Plaintiffs have failed "to establish that grizzly bear or lynx will be irreparably harmed by the Project." (Doc. 34 at 31). In support, Defendants cite to *Native Ecosystems Council v. Krueger*, another case from this District. *Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d 1344 (D. Mont. 2014). In that case, the court held that plaintiffs had failed to establish the likelihood of irreparable harm "to any endangered, threatened, or proposed species or species habitat in the absence of an injunction." *Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d at 1349. That case is distinguishable for the primary reason that the failure to demonstrate irreparable harm occurred because "no species covered by the [ESA] [was] known to exist" in the project area. *Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d at 1349. This is not the case here.

Although Plaintiffs and Defendants differ over the extent of harm implicated by the Project, Defendants admit that the Project will potentially result in at least some displacement of grizzly bears, in addition to other impacts to the Project area. (Doc. 34 at 33). In light of the standard that "establishing irreparable injury should not be an onerous task" in ESA cases, the Court finds that Plaintiffs have established a likelihood of irreparable harm related to their grizzly bear claims. *Cottonwood Envtl. L. Ctr. v. U.S. Forest Service,* 789 F.3d at 1091. Having determined that Plaintiffs have demonstrated a likelihood of success on the merits of their grizzly bear claims as well as a likelihood of irreparable harm related to

grizzly bear, the Court does not need to reach the issue of irreparable harm as it concerns lynx.

### C.    Public Interest and Balance of the Equities

Because Plaintiffs' claims are brought pursuant to the ESA, the remaining *Winter* factors—public interest and balance of the equities—tip heavily in Plaintiffs' favor. *See Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1190. Accordingly, the Court need not address those factors in detail.

However, Defendants argue that the modified preliminary injunction test that is commonly applied to ESA cases is no longer appropriate. According to Defendants, the Supreme Court's decision in *Starbucks Corp. v. McKinney* establishes that the Court must apply all four factors from the *Winter* test. *Starbucks Corp. v. McKinney,* 602 U.S. 346 (2024).

Defendants provide no citation to caselaw to support the proposition that *Starbucks* requires a reviewing court to address all four *Winter* factors in ESA cases. The Court is unconvinced that *Starbucks* invalidated the conclusion that, when considering ESA claims "the last two factors—balance of hardships and the public interest—always '[tip] heavily in favor of protected species'" *Flathead-Lolo-Bitterroot Citizen Task Force*, 98 F.4th at 1190. Following established Ninth Circuit practice and precedent, the Court finds that the balance of hardships and public interest factors tip heavily in favor of Plaintiffs.

### D. Bond

Finally, Defendants argue that, in the event the Court enjoins the Project, "Plaintiffs must post a bond." (Doc. 34 at 36). Plaintiffs seek a bond in the amount of $69,241, "for the lost timber receipts this year." (Doc. 34 at 36).

In determining whether to impose a security bond, "[t]he district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (quoting *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* 766 F.2d 1319, 1325 (9th Cir.1985), *amended,* 775 F.2d 998 (9th Cir. 1985)). Furthermore, "special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute." *Cal. ex rel. Van De Kamp v. Tahoe Regl. Plan. Agency,* 766 F.2d at 1325–26 (9th Cir. 1985).

Plaintiffs argue that the delay that will result from enjoining the Project at this stage is marginal harm, particularly considering the total bond amount that Defendants request—$69, 241. As is routine in public interest environmental cases, the Court will not impose a bond. *See Central Or. Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012).

## IV. Conclusion

IT IS ORDERED that Plaintiffs' motion (Doc. 29) is GRANTED.

19

Defendants are enjoined from implementing the Greenhorn Vegetation Project until this case has reached a decision on the merits.

DATED this 27th day of July, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge